IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RICHARD PATRICK HORTON                                                      PLAINTIFF

V.                              CASE NO. 5:17-CV-05146

TRANSPORT DEPUTY SIMER;
LIEUTENANT R. HOLT; SERGEANT
WHITNEIGH GUENTHER; DEPUTY
K. COGDILL; and DEPUTY Z. JOHNSTON,
Transport Supervisor                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a civil rights case filed by the Plaintiff, Richard Patrick Horton ("Horton"), under the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. He is currently incarcerated in the Delta Regional Unit of the Arkansas Department of Correction ("ADC").

This case centers on events beginning on February 7, 2017, and concluding on February 14, 2017. During this period, Plaintiff was transported by Deputy Simer from the Pulaski County Detention Center ("PCDC") to the Benton County Detention Center ("BCDC"). He was returned to the PCDC on February 14, 2017. Plaintiff has named as Defendants Deputy Simer, the transport officer; Lieutenant R. Holt; Sergeant Whitneigh Guenther; Deputy K. Cogdill; and Deputy Z. Johnston, the transport supervisor. Plaintiff maintains the actions of the Defendants were unconstitutional.[1]

---

[1] This case was dismissed at the screening stage. However, the Court of Appeals for the Eighth Circuit reversed and remanded the case, without explanation, and ordered it served. *Horton v. Simer*, No. 17-3084, 2018 WL 1578103 (Feb. 8, 2018).

1

The case is before the Court on the Defendants' Motion for Summary Judgment (Doc. 46). Plaintiff filed his Response in Opposition (Doc. 54). The Motion is now ready for decision.

## I. BACKGROUND

On January 12, 2017, Horton was being held in Mayes County, Oklahoma, on two failure to appear ("FTA") warrants issued by the Benton County Circuit Court Division (two separate felony counts), an FTA warrant issued by the Rogers District Court (misdemeanor count), and an FTA warrant issued by the Lowell City Court (misdemeanor count). (Doc. 54 at 7-10). Horton was transported to the BCDC. *Id.*

On January 16, 2017, Horton was given a citation on the FTA charge from the Rogers District Court, was bonded out on the FTA charge from the Lowell City Court, and was bonded out on the two FTA charges from the Benton County Circuit Court and on charges of possession of drug paraphernalia and furnishing prohibited articles. *Id.* at 14-18). Horton was given court dates of February 9, 2017, and February 21, 2017, by the Benton County Circuit Court; a court date of February 14, 2017, by the Rogers District Court; and a court date of March 13, 2017, by the Lowell City Court. (Doc. 47-6 at 21; Doc. 54 at 7-18).

Less than twenty-four hours after he bonded out, Horton was arrested by the Rogers Police Department on FTA charges out of Pulaski County. (Doc. 47-6 at 21-22). He was held at the BCDC until January 18, 2017, when a Pulaski County transport officer took Horton into custody. *Id.*

On January 24, 2017, Benton County Circuit Judge Robin Green entered a transport order in the state criminal cases against Horton, *State v. Horton*, CR 2016-1756-

2

1 and CR 2016-1551-1. (Doc. 47-2 at 1); see also Doc. 54 at 19. In those cases, Horton was charged with five counts of possession of a controlled substance, two counts of possession of drug paraphernalia, and one count of tampering with physical evidence. *Id.* The order directed the Benton County Sheriff to transport Horton from Pulaski County so that he could appear in court in Benton County on February 9, 2017, on an FTA charge and for arraignment. *Id.* The Benton County Sheriff was directed to return Horton to Pulaski County at the conclusion of the hearing. *Id.* The transport order was filed on February 1, 2017. *Id.*

On February 7, 2017, Deputy Simer picked Horton up at the PCDC. (Doc. 47-2 at 3). Horton was in the process of bonding out of the PCDC, with his bondsman actually in the lobby of the PCDC, when Defendant Simer arrived to transport him back to the BCDC. (Doc. 47-6 at 23). According to Horton, the only thing left to be done before bonding out and leaving the facility was for him to dress in his civilian clothing and be brought to the lobby. *Id.* The bondsman had already paid the bond. *Id.* at 24. Horton claims he was told that he was being sent back to Benton County for court. *Id.* Horton protested, asserting: "Benton County doesn't have no jurisdiction over me because I posted bond on all the charges that Benton County had on me. So I was technically on bond from Benton County." *Id.* Horton believed his Benton County court date was February 9th. *Id.* at 25. His bond had not been surrendered. *Id.* Horton asserts that both Defendant Simer and the Pulaski County transport deputy[2] told him that he could not bond out and had to be transported to the BCDC.

---

[2] The case against the John Doe Pulaski County transport deputy was severed and transferred to the Eastern District of Arkansas. That case was dismissed at the

3

Horton was then transported to the BCDC and booked by Sergeant Guenther. (Doc. 47-2 at 4). On that same date, February 7, a BCDC officer served Horton with an arrest warrant issued on November 8, 2016 by Benton County District Judge Paul Bridges, on charges of contempt, driving on a suspended license, having a defective tail light, and failure to appear.[3] *Id.* at 2. He was assigned a court date of March 14, 2017 for those charges. *Id.*; (Doc. 47-6 at 63-64).

After he was booked at the BCDC on February 7, Horton claims that he immediately confronted Sergeant Cogdill and asked him what jurisdiction or authority there was to return him to Benton County. (Doc. 47-6 at 25). According to Horton, Sergeant Cogdill responded that they could pick Horton up from anywhere and that because he had a problem showing up to court, they were going to make sure he showed up. *Id.* at 25, 39. Horton protested that he had not failed to appear on any current Benton County charges and there were no warrants out on him. *Id.* at 25. Horton believes the transport order directing that he be moved to the BCDC was invalid as it had been issued only eight days after he posted bond, his bond had not been surrendered or revoked, his court date was not until February 9th, and no FTA warrant had been issued. *Id.* at 25-26. Horton concedes that Deputy Simer was following the court order when he

---

screening stage on July 6, 2018. *Horton v. Doe*, No. 4:18-cv-00168 (E.D. Ark. July 6, 2018).

[3] According to Horton, this was the second time this warrant had been served on him. (Doc. 47-6 at 59). Horton maintains that he was arrested in Missouri on November of 2016 on this warrant and transported to the BCDC. *Id.* at 60-61. He further claims that he was given a citation on those charges and was assigned a court date of December 8, 2016, which he missed. *Id.* at 62-63.

transported Horton to Benton County. *Id.* at 27. However, Horton believes there should have been other documentation to support the transport order, such as a warrant number. *Id.* at 29-30.

According to Horton, even if Defendants were acting under what they believed was a legitimate order, they are "liable for my deprivation and my liberty." (Doc. 47-6 at 30). Horton bases this belief on that fact that he told Deputy Simer he was free on bond from the Benton County charges. *Id.* Horton asserts he told Deputy Simer to verify that information. *Id.* If Deputy Simer had checked, Horton believes he would have discovered that the order was based on "fictitious information." *Id.* at 31. Horton also notes that Deputy Simer did not place a reference number, warrant number, or list of outstanding charges on the paperwork he completed upon Horton's arrival at the BCDC on February 7. *Id.* at 33.

On February 9, 2017, at or after Horton's court appearance, Judge Green entered an order directing Horton to be fingerprinted by the Rogers Police Department within forty-eight hours for an arrest that occurred on September 23, 2016. (Doc. 47-2 at 12). Horton was given a court date of February 21, 2017. (Doc. 47-6 at 41). When Horton returned from court on February 9, 2017, he asked Sergeant Guenther if he was going to be transported back to Pulaski County.[4] Horton indicates that Sergeant Guenther advised him that he was being held on an Arkansas Department of Correction ("ADC") hold. *Id.* Horton maintains he told both Sergeant Guenther and Deputy Cogdill that this

---

[4] The record contains no information on whether Horton raised the issue of the validity of the transport order when he was before Judge Green or asked that an order be entered directing that he immediately be transported back to Pulaski County.

was not possible because he was not on probation or parole and had not been in the ADC since 1992.

On February 9, 2017, Horton sent a request to the transport division stating he needed to be "transported back to Pulaski Co. in order to be released." (Doc. 47-3 at 1). The following day, Deputy Johnston replied: "I will get you there ASAP." *Id.*

On February 10, 2017, Plaintiff submitted a grievance in which he stated he was being "illegally detained and prevented from posting bond since 2/7/17." (Doc. 47-3 at 1). Lieutenant Holt replied that he was transported to Benton County for court and asked how he was being illegally detained. *Id.* Lieutenant Holt further stated that "[i]nmates will be transported back when feasible, as the schedule must allow." *Id.* Horton then submitted the following:

> I have been bonded on all of the charges that [B]enton [C]o. has on me. I did not fail to appear on these charges and was in the process of bonding out of Pulaski Co. when Benton Co. picked me up, thereby preventing me from bonding out 2 days before my court date. Now I am being told that I have to be here till the 21st on different charges, thereby prolonging my incarceration by continuing to prevent me from bonding out of Pulaski Co.

*Id.* Lieutenant Holt replied on February 13, 2017, that "[t]here was an active pickup order from the Prosecuting attorney. You are not being held unlawfully." *Id.*

Horton believes Lieutenant Holt violated his rights by not investigating his continued detention after he told her his "rights had been violated because there was no jurisdiction for them or authority for them to come to Pulaski County to pick me up." (Doc. 47-6 at 52). Horton maintains that Lieutenant Holt "along with the rest of them, disregarded my rights as a free citizen to keep me incarcerated in jail, and they all acted in concert." *Id.* at 53. He also asserts that Lieutenant Holt's response was not made within twenty-four hours, as required by jail policy. *Id.*

Plaintiff submitted another request to the transport division on February 10, 2017, asking for an immediate transfer back to Pulaski County. (Doc. 47-3 at 1). Deputy Johnson replied that Horton would be taken back as soon as possible but that it would not be that weekend. *Id.*

Later that day, Horton submitted a request stating that he had been told he was being detained based on an ADC hold, but that he had not been incarcerated in the ADC since 1992. (Doc. 47-3 at 1). Horton claimed that an error had been made and that he needed to return to Pulaski County to be released on bond. *Id.* Deputy Johnston replied that the ADC hold was in error and had been corrected. *Id.* According to Horton, this meant Deputy Johnston admitted to knowing that he was being held unlawfully. (Doc. 54 at 5). Horton contends that since the release report dated February 14, 2017 indicates he was released to the ADC and not Pulaski County, it establishes that the ADC hold was never removed or corrected. *Id.* at 5-6.

On February 13, 2017, Horton again sent a request to the transport division, asking to be returned to Pulaski County. (Doc. 47-3 at 2). He stated he had bonded out on all Benton County charges. *Id.* He therefore believed Benton County had "no jurisdiction to hold [him]. For that matter [the Benton County Sheriff's Office] never had jurisdiction to begin with." *Id.* Deputy Skourup responded: "we will return you soon." *Id.*

Horton was transported back to Pulaski County on February 14, 2017. (Doc. 47-2 at 15; Doc. 47-6 at 49). He was released on bond approximately two hours later. *Id.*

It is the policy of the BCDC to maintain an Origination Case Agency file on each inmate, which "contains records documenting the BCDC's continued authority to hold an inmate, including court orders, judgments, commitment orders, and other documents."

(Doc. 47-5 at 3). When a detainee is booked into the BCDC, the arresting or transporting officer/deputy must provide a warrant, commitment order, or the equivalent, "which provides documented authority to commit or detain the inmate." *Id.* at 5. The policy further states that "[i]n the case where an intake deputy suspects or hears an outcry in which constitutional rights have been violated, the arresting or transporting officer/deputy is instructed to notify their supervisor to investigate or resolve the complaint." *Id.* at 6.

The policy regarding release and transfer of inmates provides, among other things, that "[i]nmates are entitled to timely release when they have made bond." (Doc. 47-5 at 9). Inmates being released to other jurisdictions are turned over to the custody of the transporting or receiving officers/deputies. *Id.* A separate policy exists regarding the release of inmates to transport officers. *Id.*

Horton entered a guilty plea to the Pulaski County charges. (Doc. 47-6 at 11). On November 28, 2017, a sentencing order was entered by the Pulaski County Circuit Court, sentencing Horton to a period of incarceration in the ADC. (Doc. 47-2 at 25-30). Horton was given credit for 343 days in jail. *Id.* at 29. The jail time credit started on October 24 or 26 of 2016 and included credit for the time served in the BCDC from February 7 to February 14, 2017. (Doc. 47-6 at 12 & 66).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made

a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Meteg v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Defendants contend they are entitled to summary judgment for the following reasons: Horton's claims are barred by the principles set forth in *Heck v. Humphrey*; Plaintiff was transported pursuant to a valid court order; Horton is not entitled to a grievance procedure or response; Defendants are entitled to qualified immunity; Horton suffered no damage; and there is no basis for official capacity liability.

### A. *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is

not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. However, "some section 1983 actions, 'even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment' against a plaintiff and should be allowed to proceed." *Moore v. Sims*, 200 F.3d 1170, 1171 (8th Cir 2000) (quoting *Heck*, 512 U.S. at 487 n.7).

Here, Horton is challenging only the constitutionality of the transport order and his detention from February 7, 2017, until February 14, 2017. His claims do not call into question any underlying conviction or sentence. *Heck* does not bar his claims from proceeding.

### B. The Transport Order

The order in question was issued by the Circuit Judge handling Horton's state criminal cases. It contained the correct pending criminal case numbers. It ordered Horton to be picked up at his current place of incarceration, Pulaski County. And, finally, the order was signed; filed of record; and certified.[5] (Doc. 47-2 at 1). There was nothing about the order that would have caused anyone to question about its validity.

"An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988) (citing *Baker v. McCollan*, 443 U.S. 137

---

[5] Judge Green is absolutely immune from suit. *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978) (judge absolutely immune for judicial acts unless taken in clear absence of all jurisdiction).

(1979)). By the same reasoning, transporting a person from one detention facility to another pursuant to a valid court order does not give rise to a § 1983 claim.

Because of the facially valid pick-up order, Deputy Simer may not be held liable for a violation of § 1983 even if the order was based on false information, as Horton maintains. Horton does not contend that Deputy Simer supplied the court with false information, knew that the order was issued based on false information, transported him in a harmful manner, or acted with knowledge that the validity of the warrant was subject to question. Rather, Horton objects to the execution of the order at all and, in particular, to the timing of its execution—which occurred just as he was being released on bond.

Even if such a cause of action under § 1983 exists, courts have extended a judge's absolute immunity from suit to officers who act at the direction of the court. In *Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974), the Eighth Circuit held that a "quasi-judicial form of immunity is extended to police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court." *See also Penn v. United States*, 335 F.3d 786, 790 (8th Cir. 2003) (sheriff and captain executing a facially valid tribal court order were "entitled to absolute quasi-judicial immunity for all acts prescribed by the order").

Alternatively, Deputy Simer would be entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those

11

who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)). "Qualified immunity is appropriate only if 'no reasonable factfinder' could determine that (1) the facts viewed in the light most favorable to the plaintiff show that the officer's conduct violated a constitutional right, and (2) the constitutional right was 'clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful.'" *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850 (8th Cir. 2013).

Even if a court order is invalid for reasons not apparent from the face of the order, officers are generally held to be entitled to qualified immunity so long as no facts are alleged from which it could be inferred that a reasonable police officer would have known that the actions he took were illegal. *See, e.g., Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994) (existence of the warrant shields the deputy "from liability for executing it, unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization"); *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir. 1982) (sheriff who acted in good faith on a facially valid court order is entitled to qualified immunity); *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1107 (D. Neb. 2015) (police officers who arrested the plaintiff "would be entitled to qualified immunity because Plaintiffs do not allege any facts from which an inference can be drawn that reasonable police officers in the City of Omaha police officers' position would have know that [plaintiff's] arrest was illegal despite the existence of the bench warrant." (citations omitted)).

Here, Horton contends the transport order was invalid because he had bonded out on all charges in the two criminal cases that were the subject of the order, and he was in

the process of being released on bond in Pulaski County. The fact remains, however, that Horton was still in the custody of Pulaski County and had not been processed out on bond when Deputy Simer arrived to pick him up. Horton also suggests, based on later references by BCDC officials, that the transport order was issued based on a false belief that Horton was in ADC custody. However, even assuming that Horton's allegations are true, they do not suggest that the order was facially invalid or that a reasonable officer in Deputy Simer's position would have known that it was illegal to transport Horton pursuant to the order. Deputy Simer is therefore entitled to qualified immunity.

### C. The Seven-Day Detention

Applying the case law discussed above, it would appear that no wrongful detention claim can be asserted against the Defendants based on them incarcerating Horton from Tuesday, February 7, 2017, until his court appearance on Thursday, February 9, 2017. He was held during this time pursuant to a facially valid order. On February 9, 2017, another order was entered for Horton to be fingerprinted within forty-eight hours. There is nothing in the record indicating when Horton was fingerprinted by the City of Rogers. Giving Horton the benefit of all reasonable inferences, the Court will assume he was fingerprinted on February 9, 2017, prior to being taken back to the BCDC. Horton remained at the BCDC an additional four days (February 10-13) and was transported back to Pulaski County in the early morning hours of the fifth day, Tuesday, February 14, 2017.

First, Horton contends that once he called into question the validity of the order, Defendants had a duty to investigate his claims that it had been wrongfully issued. Any claim based on the theory that Defendants had a duty to investigate the validity of the

transport order is foreclosed by the above ruling. The order was facially valid, and the Defendants were entitled to rely on it.[6]

Second, Horton maintains he was not promptly transported back to Pulaski County, and this violated his rights. Most cases concerning a claim of wrongful or prolonged detention deal with arrests based on misidentifications; an inmate not being brought before the court in a timely manner; an inmate being held after a release order has been issued; or an inmate being held, despite his protests, based on an incorrect calculation of the inmate's sentence or good-time credits.

In *Baker v. McCollan*, 443 U.S. 137, 144-45 (1979), the Supreme Court ruled that a detention of three days in a case of mistaken identification did not constitute a deprivation of liberty where the sheriff acted pursuant to a warrant conforming to constitutional standards. The court assumed for the sake of argument that, "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Id.* at 145. However, the Court concluded that the sheriff in executing a warrant was not required by the Constitution "to investigate independently every claim of innocence . . . . Nor is the official charged with maintaining

---

[6] Moreover, the Court does not believe that Horton intended to bring a claim based on alleged inadequacies in the grievance procedure at the BCDC. Rather, Horton contends his grievances gave rise to the Defendants' duty to investigate his claims. In any event, any constitutional claim based on perceived inadequacies in the grievance procedure fails as a matter of law. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002).

custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such claim." *Id.* at 145-46.

In keeping with *Baker*, the Eighth Circuit has held that "[a]n unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to a facially-valid warrant for a few days does not amount to a constitutional violation." *Kennell v. Gates*, 215 F.3d 825, 828 (8th Cir. 2000). At a minimum, the Eighth Circuit held that a plaintiff must demonstrate deliberate indifference on the part of a defendant to support a claim of wrongful detention under Section 1983. Deliberate indifference requires a showing of conduct that is "so knowingly hostile or indifferent to a clearly established constitutional right that it evidences a level of 'criminal recklessness.'" *Lund v. Hennepin Cnty.*, 427 F.3d 1123, 1127 (8th Cir. 2005).

However, in cases where there is an extended detention prior to an initial court appearance, or when out-processing procedures delay the release of the individual, or when an individual is held after a court orders his release, the court analyzes the claim under the conscience-shocking standard of the Due Process Clause of the Fourteenth Amendment. *See, e.g., id.* at 1126 (substantive due process rights not violated by a 12-hour delay in releasing detainee after a judge ruled he was not required to post bail); *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 674 (8th Cir. 2004) (38-day pre-appearance detention violated due process); *Davis v. Hall*, 375 F.3d 703, 718 (8th Cir. 2004) (prolonged detention presented a constitutionally protected liberty interest which was clearly established in 2004).

In *Davis v. Hall*, Davis was incarcerated for fifty-seven days after a judge orally, and in the sentencing order, directed his immediate release. The Eighth Circuit stated that:

> Davis's § 1983 complaint implicates a constitutionally protected interest under the Fourteenth Amendment's guarantee of due process of law, but prolonged detention does not rise to the level of a Fourteenth Amendment violation unless the defendants acted with the requisite state of mind. The protections of the Due Process Clause are triggered when the official's conduct was conscience-shocking and when the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. The Supreme Court has taken a context-specific approach to determining whether intermediate culpable states of mind, such as recklessness, support a section 1983 claim by shocking the conscience and, thus, violating due process.

*Id.* at 718 (internal punctuation marks and citations omitted).

Thus, "[g]enerally prolonged detention beyond the term authorized by law unlawfully deprives a prisoner of rights protected under the due process clause of the Fourteenth Amendment." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005). It is clear from these cases that the Court must consider both the length of the delay and the reason for the delay.

In this case, Horton was transported back to Pulaski County on the morning of the fifth day after his court appearance. Transporting Horton required him first to be processed out of Benton County. Second, arrangements needed to be made for transport personnel and a vehicle. Third, time needed to be allowed for travel from Benton County to Pulaski County, as well as time to complete the paperwork necessary to release Horton to the custody of Pulaski County. Fourth, two of the five days at issue here fell during a weekend. Fifth, it is undisputed that Horton was being held at the time pursuant to the transport order that required Defendants to return him to the custody of

Pulaski County. Considering all of these circumstances, the Court finds as a matter of law that holding Horton for five days prior to his transport is insufficient to implicate a liberty interest.

But even if a liberty interest were implicated here, there is no evidence in the summary judgment record from which a reasonable juror could conclude the Defendants acted with deliberate indifference in not transporting Horton back to Pulaski County until February 14, 2017. A delay this brief would not meet the "shocks the conscience standard," particularly in light of the fact that Horton conceded that he had to be transported back to be released on bond by Pulaski County.

Moreover, if the Court were to assume that a constitutional violation exists, Defendants would nevertheless be entitled to qualified immunity. From the cases discussed above, the Court concludes it was not clearly established in February of 2017 that a reasonable officer would know that a five-day delay in returning an inmate pursuant to a transport order would be shocking to the conscience and therefore violative of the Due Process Clause of the Fourteenth Amendment. Defendants are entitled to summary judgment on the wrongful or excessive detention claims brought against them in their individual capacities.

### D. Official Capacity Claims

To establish official capacity liability on a claim under the Due Process Clause, a plaintiff must show both: (1) that the detention shocks the conscience; and (2) that it was caused by a county policy or custom evidencing a level of culpability akin to criminal recklessness, *i.e.*, deliberate indifference. *Lund*, 427 F.3d at 1127. Horton can prove neither. As discussed above, no constitutional right is implicated by Horton's transport,

detention, and return to Pulaski County. Moreover, he has not alleged the existence of any custom or policy of Benton County in either transporting inmates without proper authority or in unreasonably delaying the return of inmates brought to Benton County pursuant to transport orders. He has alleged that Benton County failed to comply with its own rules. However, violations of Benton County's own written policies do not establish the existence of a custom or policy that was the moving force behind the alleged constitutional violation. See, e.g., Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

"It is well settled under [Eighth Circuit] precedents that establishing a violation of due process as a basis for municipality liability under § 1983 requires plaintiff to show more than mere negligence or unreasonableness; a plaintiff must point to conduct by the municipality, or by employees acting with its knowledge, that shocks the conscience given the totality of the circumstances." Lund, 427 F.3d at 1126. Further, Plaintiff must establish deliberate indifference on the part of the municipality. Id.

Under the totality of the circumstances in this case, no fact finder could reasonably find that the detention shocks the conscience or that deliberate indifference—the requisite level of culpability for municipal liability—has been shown. No official capacity liability exists.

### E. PLRA Physical Injury Requirement

Defendants also argue that Horton's claims for damages are barred by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). Section 1997e(e) provides as follows: "No Federal civil action may be brought by a

prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The provision limits the available damages in the absence of a physical injury but does not preclude a Plaintiff from pursuing a claim. See Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004) (physical injury requirement of the PLRA "limits recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages); see also Pool v. Sebastian Cnty., 418 F.3d 934, 942 n.2 (8th Cir. 2005) (Section 1997e(e) presents an issue of damages under the PLRA). This provision would bar Horton's claims for anything other than nominal damages. Since none of Horton's claims survive for trial, this point is moot.

### IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. 46) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. A separate judgment will enter.

**IT IS SO ORDERED** on this 31st day of January, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE